## Case No. 11,130.

### PICO et al. v. UNITED STATES.

[Hoff. Land Cas. 279.][1]

District Court, D. California. Dec. Term, 1857.[2]

MEXICAN LAND GRANTS — ISSUE OF TITLE BEFORE CONQUEST OF CALIFORNIA.

Although the final grant in this case was not issued until the seventh of July, 1846, which date the political branch of our government seems to have indicated as the period of the

[1] [Reported by Hon. Ogden Hoffman, District Judge, and here reprinted by permission.]

[2] [Reversed in 23 How. (64 U. S.) 321.]

actual conquest of California, yet, the governor having ordered the title to issue on the eleventh of June, 1846, the claim presents an equity which must be respected by the United States.

Claim for eleven leagues of land in Tuolumne county, rejected by the board, and appealed by the claimants [Francisco Pico and others, claiming the Rancho Las Calaveras].

Stanly & King, for appellants.

P. Della Torre, U. S. Atty., for appellees.

HOFFMAN, District Judge. The expediente produced from the archives in this case contains the following documents: 1st. A petition by the claimant to the justice of the peace and military commander, Don Juan A. Sutter, requesting a favorable report for the grant of the land mentioned in the petition and delineated on the map which accompanied it. This petition is dated May 1st, 1846. In the margin of this petition is a certificate by Sutter, dated on the same day, that the land solicited is vacant. 2d. A petition by the claimant to the sub-prefect of the Second district, soliciting his report to accompany the representation and diseño previously presented to the judicial officer of said establishment, from whom the petitioner had already obtained a certificate, so that further proceedings may be taken with a thorough understanding of the matter. This petition is dated May 8th, 1846. In the margin is a note by Francisco Guerrero, dated May 12th, 1846, in which he declines to act in the matter, not having the necessary authority, and he refers it to the prefect of the Second district "to resolve what he shall deem proper." 3d. A report of the prefect, Manuel Castro, dated May 18th, 1846, in which he states, that in view of the petition, the report of the sub-prefect, and that of the judge of Nueva Helvetia, the qualifications of the petitioner, and everything else, he is of opinion that the said party may be granted the ownership of said land, "if it shall appear convenient to your excellency." 4th. An order of the governor as follows: "In view of the reports contained in this expediente in favor of the interested party, let the title issue to secure the ownership, without prejudice to what may belong to the bordering land owners. Angeles, June 11th, 1846. Pico."

The claimant has also produced the final title issued in pursuance of the above order. It is dated, however, on the twentieth of July, 1846, about thirteen days after the capture of Monterey. The claim was rejected by the board, on the ground that the final title issued after the occupation of the country by the American forces. It must be admitted, that after California was subjected to the American arms, no Mexican authority could do any act which would affect the rights of the United States to the public property. Fremont v. U. S., 17 How. [58 U. S.] 563. "The civil and municipal officers who continued to ex-

ercise their functions, did so under the authority of the American government." Id.

It is not, however, easy to determine the precise period at which the Mexican authority ceased de facto to exist, and at which California must be deemed to have been subjected to our arms. The political branch of our government seems to have indicated the seventh of July, 1846, the date of the capture of Monterey, as the period at which the conquest is deemed to have been effected. Act 1851, § 14. It is to be considered, however, that Los Angeles, the capital of the country, was not taken until some months later. The governor continued in the exercise of his functions until August, and regular sessions of the departmental assembly seem to have been held for some time afterwards. But assuming the earlier date as the period when the powers of the Mexican functionaries ceased, the question arises whether the circumstance that the final document issued thirteen days after taking of Monterey is a fatal objection to the claim. From the expediente already referred to, we find that as early as the month of May, all the proceedings were had preliminary to the issuance of the final document. A petition was presented with favorable reports and accompanied by a diseño, and the governor, on the eleventh of June, accedes in effect to the petition, and orders the final title to be issued to secure the ownership. So far as the governor's discretion was concerned, he had fully exercised it, and had determined to grant the land. If the disturbed state of public affairs, or the neglect of the secretary, prevented the performance of the merely ministerial act of drawing out the title in form and presenting it for signature to the governor, it seems to me that such an omission ought not to invalidate the inchoate or incipient title which the petitioner had acquired by the previous proceedings.

In the case of U. S. v. Sanchez [Case No. 16,217], which depended on the same question as that raised in this case, the judge of the Southern district of this state decreed in favor of the claimant. That decision has been acquiesced in by the United States and the appeal to the supreme court dismissed. In the reasoning and conclusions of the court in that case I entirely concur, and am of opinion that the petition, the favorable reports, and the order of the governor directing the title to issue, followed by the actual issuance of the title at a period when the governor could hardly have anticipated the consequences of the capture of Monterey, and certainly before he could have been fully satisfied that the sovereignty had finally passed away from Mexico, constitute an equitable title which the United States must respect.

A decree of confirmation must be entered.

[On appeal to the supreme court, the decree of this court was reversed. 23 How. (64 U. S.) 321.]

PICO (UNITED STATES v.). See Cases Nos. 16,044–16,048.